## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 8:05CR199 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM |
| | ) | AND ORDER |
| FRED DAVID RODRIGUEZ-SOLIS, | ) | |
| JOSE C. CONTRERAS-CORTEZ, | ) | |
| JOSUE MARTIN RODRIGUEZ-LOPEZ, | ) | |
| and JOSE HERNANDEZ-MENDOZA, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Report and Recommendation (Filing No. 65) issued by Magistrate Judge Thomas D. Thalken recommending: the motion to suppress filed by the Defendant, Fred David Rodriguez-Solis (Filing No. 37) be denied; the motion to suppress filed by the Defendant Jose C. Contreras-Cortez (Filing No. 27) be denied as to the currency found on his person but otherwise granted; the motion to suppress filed by the Defendant, Josue Martin Rodriguez-Lopez (Filing No. 31) be granted as to any evidence found during the search of Rodriguez-Lopez's 24th Street residence and otherwise denied;[1] and the motion to suppress filed by the Defendant, Jose Hernandez-Mendoza (Filing No. 33) be granted as to the statements and gestures made in Apartment No. 7 on March 21, 2005, but otherwise denied.  Rodriguez-Solis filed a statement of objections to the Report and Recommendation and a supporting brief (Filing Nos. 70, 71) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3(a).  Rodriguez-Lopez did the same (Filing Nos. 72, 73).  The government filed a response.  (Filing No. 74.)

---

[1]The recommendation states in error that Rodriguez-Lopez's motion be denied in its entirety.  (Filing No. 65, at 25.)  Judge Thalken explains his recommendation in the Report.  (Filing No. 65, at 19-21.)

The Defendants are charged in various counts together with others in a multi-count Indictment alleging various crimes involving: the distribution and possession with intent to distribute methamphetamine; using or carrying a firearm in connection with the conspiracy alleged in Count I; and criminal forfeiture.

Following a lengthy evidentiary hearing that took place on three different days, Judge Thalken issued a Report and Recommendation in which he concluded, with respect to Rodriguez-Solis: officers had both a reasonable suspicion and probable cause to stop his Thunderbird on March 21, 2005; he was legally arrested as he was driving on a suspended license; and the Thunderbird was legally searched incident to his arrest. Therefore, Judge Thalken recommends that Rodriguez-Solis's motion be denied.

With respect to Contreras-Cortez, Judge Thalken concluded: his suspicious behavior gave officers reason to temporarily detain him to determine whether his behavior was innocent or indicated criminal activity; the pat-down search of his person was legal, and the currency found on his person is admissible; his questioning in the small bathroom in Apartment No. 7 while surrounded by armed police officers, not preceded by *Miranda* warnings, and extending beyond biographical information, was improper; and he did not knowingly or voluntarily consent to the search of Apartment No. 2, noting that the written consent, executed "well after" officers entered Apartment No. 2, is of little significance. Judge Thalken recommends that Contreras-Cortez's motion be denied as to the currency found on his person but otherwise granted.

Regarding Rodriguez-Lopez, Judge Thalken concluded: he voluntarily allowed officers entry into the 24th Street residence; he did not consent to the warrantless search of the premises of the 24th Street house; his warrantless arrest was based on probable

2

cause; and the search of his person and seizure of his cellular telephone were valid as a search incident to his lawful arrest.   Therefore, Judge Thalken recommends that Rodriguez-Lopez's motion be granted as to any evidence found during the search of Rodriguez-Lopez's 24th Street residence and otherwise denied.

Finally, turning to Hernandez-Mendoza, Judge Thalken concluded: he was properly arrested for driving on a suspended license;[2] he and the vehicle he was driving were properly searched incident to his arrest; the statements and gestures he made while inside Apartment No. 7 were volunteered but were fruits of the officers' illegal warrantless entry into the apartment that was not justified by exigent circumstances, including officer safety; the inevitable discovery doctrine allows for the admissibility of evidence found during the search of Apartment No. 7, because probable cause supported the issuance of the search warrant for the apartment and the search was validly conducted pursuant to the warrant. On the basis of these determinations, Judge Thalken recommends that Hernandez-Mendoza's motion be granted as to the statements and gestures made in Apartment No. 7 on March 21, 2005, but otherwise denied.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3(a), the Court shall make a de novo determination of those portions of the report, findings, and recommendations to which the Defendants have objected.   The Court may accept, reject, or modify, in whole

---

[2]Judge Thalken's factual findings also indicates that Hernandez-Mendoza was stopped for a traffic violation.  Therefore, the Court concludes that probable cause existed for the traffic stop.  *United States v. Williams,* 431 F.3d 296, 298 (2005) (stating that a minor traffic violation constitutes probable cause for a traffic stop).

3

or in part, the Magistrate Judge's findings or recommendations.  The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## STATEMENT OF FACTS

The Magistrate Judge provided a detailed account of the events surrounding the events relevant to the traffic stop, search, and arrest.  The Court has considered the transcripts of the hearing conducted by Judge Thalken (Filing Nos. 52, 53, 54, 55, 56, 57, and 61).  The Court also carefully viewed the evidence (Filing No. 59).  Based on the Court's de novo review of the evidence and arguments, the Court adopts the Magistrate Judge 's factual findings as amended in the Analysis below.

## FACTUAL BACKGROUND

Repeating Judge Thalken's detailed findings of fact would serve no useful purpose. Therefore, see Judge Thalken's Report and Recommendation (Filing No. 65, at 3-14) for the findings of fact.

## ANALYSIS

### FRED DAVID RODRIGUEZ-SOLIS

Rodriguez-Solis objects to the following portions of Judge Thalken's Report and Recommendation:

1.      page 3 - the finding that the confidential informant ("CI") told Sergeant Greg Gonzalez that "Freddy" was driving a silver Ford Thunderbird;

2.      page 6 - the finding that his license was suspended;

3.      page 7 - the finding that he was interviewed by Sergeant Gonzalez at the central police station;

4

4.      page 14 - the summary of his motion; and

5.      page 14 - the conclusion that the traffic stop was supported by reasonable suspicion and probable cause.

**Page 3 - Silver Thunderbird**

Rodriguez-Solis argues that on cross-examination Sergeant Gonzalez "admitted" that the informant described four or five vehicles but did not assign any particular vehicle to Rodriguez-Solis, citing to specific portions of pages 65 and 66 of the transcript.

The testimony on pages 65 and 66 cited by Rodriguez-Solis indicates the following: Officer Branch's report does not assign a particular vehicle to Rodriguez-Solis; and as part of the investigation, officers were on the lookout for four or five different vehicles. (Tr. 65:19-66:6.)  However, taken in its entirety, Sergeant Gonzalez's testimony is clear that,  according to codefendant Duane Anderson's post-arrest statement, "Freddy" or another suspect was driving a silver or grey Thunderbird.  (See, e.g., Tr. 54, at 27:6-7; 117:10-11.)  The objection is denied.

**Page 6 - Suspended License**

Rodriguez-Solis objects to the finding that he was driving on a suspended license, arguing that this factual finding is not supported by any testimony.  However, the testimony clearly indicates that Rodriguez-Solis was driving without any license.  (Tr. 37:4; 288:18-19.)  The objection is granted, and the factual findings are amended to the extent that the testimony shows that Rodriguez-Solis was not driving on a suspended license but rather was driving without any license.

***Page 7 - Sgt. Gonzalez Interview of Rodriguez-Solis at Police Station***

Rodriguez-Solis objects to the finding that Sergeant Gonzalez interviewed him at central police headquarters. The objection is granted to that narrow extent. However, the factual findings are amended to reflect the following: Sergeant Gonzalez tried to initiate a discussion with Rodriguez-Solis at the scene of the stop; however, Gonzalez turned the questioning over to ICE Special Agent Ovidio De La Fuente; Gonzalez and De La Fuente transported Rodriguez-Solis to central police headquarters; and at the police station De La Fuente interviewed Rodriguez-Solis. (Tr. 42:12-18; 44:12-13; 291:14-292:3.)

***Page 14 - Summary of Motion***

Rodriguez-Solis objects to Judge Thalken's summary of his motion, arguing that Judge Thalken's summary failed to include the portion of the motion relating to the statements Rodriguez-Solis made at the scene and the police station. Rodriguez-Solis argues, in relevant part, that the "evidence and statements" obtained as a result of the traffic stop should be suppressed as fruit of the poisonous tree. (Filing No. 37, ¶ 5.)

Rodriguez-Solis's brief in support of the motion includes a brief section arguing that his statements made at the scene of the traffic stop should be suppressed. Although the caption of section VI of the brief also alleges that Rodriguez-Solis was not advised of his *Miranda* rights, there is no discussion of this issue within the body of the brief. (Filing No. 38, § VI.) At the evidentiary hearing, defense counsel waived an opening statement, and during closing argument the only reference to statements was that "all of the evidence . . . including the stop of the vehicle, any statements that he made . . . should be suppressed." (Tr. 556, 17-21.) The first time the *Miranda* issue was raised appears in the brief in support

6

of the objections to the Report and Recommendation. (Filing No. 71, § IV.) Because the issue was not raised initially by defense counsel, any issue regarding the lack of *Miranda* warnings was waived.[3]  *See* NECrimR 12.3(b)(1).

The objection is granted only insofar as Judge Thalken did not specifically address the poisonous tree issue. However, as seen below, the Court agrees with Judge Thalken's analysis that the traffic stop was supported by sufficient reasonable suspicion, and also probable cause. Therefore, the Court concludes that any statements made by Rodriguez-Solis are not the fruit of an illegal stop.

### Legality of the Traffic Stop

Rodriguez-Solis argues that he was stopped only because he was a "bigger" Hispanic male in a silver Thunderbird near the area of 10th and Pacific Streets in Omaha, Nebraska.

Reasonable suspicion exists for a stop when officers "have reasonable suspicion, based on specific and articulable facts, that a driver or passenger is involved in criminal activity." *United States v. Stephens,* 350 F.3d 778, 779 (8th Cir. 2003).

In the instant case, officers first obtained information on more than one occasion from a reliable CI. This particular CI had provided accurate and reliable information in the past that led to numerous felony drug arrests and the seizure of narcotics. The CI has also made numerous controlled buys under the direction of Mark Lang, the affiant of the search warrant for the house on 24th Street (Ex. 3). The CI gave information about "Josue" and

_____

[3]The testimony reflects that Rodriguez-Solis was questioned about biographical information and perhaps his immigration status by ICE Special Agent De La Fuente. (Tr. 304-313.) De La Fuente testified that his questioning and statements made by Rodriguez-Solis did not involve drug trafficking. (Tr. 309.)

7

"Freddy" distributing "ice" from Apartment No. 7 at 2616 Poppleton Avenue ("Apartment No. 7"). The CI described "Freddy" as a younger Hispanic male, stocky and balding. The CI said that Freddy, a Sureno gang member, worked at Old Market Auto on South 10th and Pacific Streets in Omaha. About four or five vehicles were mentioned. However, after reading the testimony in its entirety, this court concludes the CI linked Freddy with a silver or grey Ford Thunderbird. Officers went to survey Apartment No. 7. While they were there, Officer Espejo recognized the driver of a car that pulled up as Marcos Avila, known to him as a Sureno gang member driving on a suspended license. Avila was arrested. Avila then gave information about "Juan" who lived at Apartment No. 7 where Avila and his friends smoked ice with Freddy. Avila smoked ice in the apartment as recently as the early morning hours during the previous night. Avila said that Freddy might have a brother living upstairs from Apartment No. 7.

Based on the CI's information, officers expected a drug deal and again surveilled Apartment No. 7. Rogelio Valenzuela drove up, walked toward the residence and then got back in his Jeep Cherokee and left. Sergeant Gonzalez followed him and witnessed what he perceived to be a drug deal between Valenzuela and Duane Anderson, who was in a Blazer. Anderson was arrested and cooperated. Anderson gave detailed information about a drug conspiracy including: Hispanic males identified by names and physical descriptions; descriptions of vehicles; and the others' involvement with Old Market Auto. Anderson gave telephone numbers for "Matty One," "Matty Two," and "Freddy." Anderson said that Freddy had delivered drugs to him in a silver Thunderbird.

Officers set up a drug sale with one of Anderson's suppliers. Before making the call, officers surveyed the Old Market Auto and Apartment No. 7. Officer Heidzig stated that

8

she saw a silver Thunderbird with a lone Hispanic male inside at the Old Market Auto lot when the business seemed to be closed.  As the individual began driving the Thunderbird away, Heidzig observed that the driver was a Hispanic male, stocky and bald.  The driver was stopped and identified as Rodriguez-Solis.  He produced a Mexican consulate card but no driver's license.  Sergeant Gonzalez and ICE Special Agent De La Fuente questioned him, and it was learned that Rodriguez-Solis was in the United States illegally and was driving on a suspended license.  On those bases he was arrested.

Clearly, the stop of the Thunderbird driven by Rodriguez-Solis was amply supported by reasonable suspicion.[4]  The objection is denied.

**JOSUE MARTIN RODRIGUEZ-LOPEZ**

Rodriguez-Lopez objects to the following portions of Judge Thalken's Report and Recommendation:

1.    the conclusion that his warrantless arrest was proper;

2.    the conclusion that the search of his person and seizure of a cellular telephone from his person was valid as a search incident to a lawful arrest; and

---

[4]It is not necessary to belabor the issue of probable cause since the evidence overwhelmingly shows reasonable suspicion.  However, the Court notes its agreement with Judge Thalken that probable cause existed for the stop.  *United States v. Steele,* 132 Fed. Appx. 75, 77 (8th Cir. 2005) (stating that probable cause justified a stop where officers believed that a drug crime was in progress).  Moreover, the Court notes that Rodriguez-Solis's challenge to the stop appears to be an equal protection claim, and he has not met his burden of proving selective enforcement of the federal drug laws based on race.  *See United States v. Bell,* 86 F.3d 820, 823 (8th Cir. 1996) (stating that one claiming selective enforcement of a facially neutral statute must show: enforcement of the law had a discriminatory effect; and the enforcement was motivated by a discriminatory purpose).

3.      page 25 - the denial of the motion in its entirety given that part of the motion was granted on page 20.

***Warrantless Arrest; Seizure of Cellular Telephone***

Rodriguez-Lopez argues that his warrantless arrest was not supported by probable cause.  Law enforcement officers have probable cause to justify a warrantless arrest when, at the moment of the arrest, officers are aware of "facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested."  *United States v. Hartje,* 251 F.3d 771, 775 (8th Cir. 2001) (citing *Beck v. State of Ohio,* 379 U.S. 89, 91 (1964)); *United States v. Reinholz,* 245 F.3d 765, 778 (8th Cir. 2001).  "In establishing probable cause, law enforcement officials enjoy substantial latitude in interpreting and drawing inferences from factual circumstances." *United States v. Horne,* 4 F.3d 579, 589 (8th Cir.1993).  "While a 'bare suspicion' of criminal activity is not sufficient to establish probable cause," evidence sufficient to justify a conviction is not required before making a warrantless arrest.  *United States v. Morales,* 923 F.2d 621, 624 (8th Cir.1991).  The determination of probable cause does not depend on isolated facts, but rather on the cumulative effect of the totality of the circumstances. *United States v. Reiner Ramos,* 818 F.2d 1392, 1394 (8th Cir.1987).  The approach used in determining probable cause is "'practical, commonsense,' and 'non-technical.'"  *Id. (*quoting *United States v. Briley,* 726 F.2d 1301, 1306 n.3 (8th Cir.1984)).

Applying this standard, the Court concludes that probable cause amply justified Rodriguez-Lopez's arrest.  The familiar and reliable CI said that Rodriguez-Lopez was

10

selling ice with others and worked at Old Market Auto with Rodriguez-Lopez's brother, Freddy. During his post-arrest interview, Duane Anderson later corroborated some of the CI's information. Officers knew where Rodriguez-Lopez lived, and a previously described Jeep Cherokee was seen parked behind Rodriguez-Lopez's residence. Rodriguez-Solis was arrested in the silver Thunderbird described as one of the vehicles used in the conspiracy. Officers searched Apartment Nos. 2 and 7, where they found methamphetamine and currency. Other alleged co-conspirators of Rodriguez-Lopez were in custody, and officers had information linking them to Rodriguez-Lopez, Rodriguez-Lopez's vehicle and Apartment Nos. 2 and 7. Officers also knew Rodriguez-Lopez from two previous drug investigations. The Court notes that none of these facts found by Judge Thalken were objected to by Rodriguez-Lopez. Therefore, probable cause clearly existed for Rodriguez-Lopez's arrest. The search of Rodriguez-Lopez's person incident to his arrest was lawful. The objection is denied.

### *Page 25 - Conclusion*

Rodriguez-Lopez objects to the recommendation(Filing No. 65, at 25) that his motion be denied, in light of the discussion on page 20 indicating that Judge Thalken recommends that his motion be granted in part. The objection is granted, and it is understood that the recommendation is that the motion is granted as to any evidence found during the search of the premises of Rodriguez-Lopez's 24th Street residence, and otherwise denied.

IT IS ORDERED:

1.      The Magistrate Judge's Report and Recommendation (Filing No. 65) is amended as follows:

11

      a.     the factual findings are amended as indicated in the accompanying Memorandum;

      b.     it is understood that Judge Thalken intended to state in ¶ 3 of the Recommendation (Filing No. 65, at 25) that Rodriguez-Lopez's motion to suppress (Filing No. 31) should be granted as to any evidence found during the search of the 24th Street residence and otherwise denied;

2.     Otherwise, the Magistrate Judge's Report and Recommendation (Filing No. 65) is adopted;

3.     The Statement of Objections to the Report and Recommendation (Filing No. 70) filed by the Defendant, Fred David Rodriguez-Solis, is narrowly granted in part and denied in part as follows:

      a.     the objections are granted insofar as:

           (1)     the Magistrate Judge's findings of fact are amended as indicated in this Memorandum and Order;

           (2)     the poisonous tree issue was not specifically discussed in the Report and Recommendation;

      b.     otherwise, the objections are denied;

4.     The Statement of Objections to the Report and Recommendation (Filing No. 72) filed by the Defendant, Josue Martin Rodriguez-Lopez, is narrowly granted in part and denied in part as follows:

      a.     the objections are granted insofar as the Court acknowledges that in ¶ 3 of the Recommendation Judge Thalken intended to grant the

12

motion to suppress as to any evidence found during the search of the premises of Rodriguez-Lopez's 24th Street residence and otherwise deny the motion;

b.     otherwise, the objections are denied;

5.     The Defendant Rodriguez-Solis's Motion to Suppress (Filing No. 37) is denied;

6.     The Defendant Contreras-Cortez's Motion to Suppress (Filing No. 27) is denied as to the currency found on his person but otherwise granted;

7.     The Defendant Rodriguez-Lopez's Motion to Suppress (Filing No. 31) is granted as to any evidence found during the search of the premises of Rodriguez-Lopez's 24th Street residence, and otherwise denied; and

8.     The Defendant Hernandez-Mendoza's Motion to Suppress (Filing No. 33) is granted as to the statements and gestures made in Apartment No. 7 on March 21, 2005, but otherwise denied.

DATED this 10th day of March, 2006.

                                        BY THE COURT:

                                        s/Laurie Smith Camp
                                        United States District Judge